# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**KENTDELL LANDRY (#578407)**                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, WARDEN**                          **NO. 15-0005-SDD-EWD**

## NOTICE

     Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

     In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.   Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

     ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

     Signed in Baton Rouge, Louisiana, on February 28, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**KENTDELL LANDRY (#578407)**                                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, WARDEN**                                    **NO. 15-0005-SDD-EWD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   Petitioner Kentdell Landry challenges his 2010 convictions and sentences entered in the Nineteenth Judicial Court for the Parish of East Baton Rouge, State of Louisiana, on one count of aggravated rape, one count of armed robbery and one count of attempted armed robbery.   Petitioner contends (1) that the trial court erred in allowing certain evidence to be admitted at trial, (2) that such error was not harmless, (3) that Petitioner's request for copies of the state court record, including the trial proceedings and investigatory and evidentiary materials, has been improperly denied, (4) that he was provided with ineffective assistance of counsel at trial, and (5) that there was prosecutorial misconduct during trial.

In an initial response to Petitioner's application, the State asserted that Petitioner's claims herein were time-barred.   Pursuant to a Report and Recommendation dated May 17, 2017 (R. Doc. 21), the undersigned Magistrate Judge recommended that the State's contention in this regard be rejected.   Pursuant to Ruling dated June 7, 2017 (R. Doc. 25), the assigned District Judge accepted the Magistrate Judge's Recommendation and rejected the State's contention relative to untimeliness.   The State has since filed a Supplemental Memorandum addressing Petitioner's claims.   *See* R. Doc. 26.

This Court will not here engage in a detailed recitation regarding the procedural history of this case, which history has already been provided in connection with the earlier Magistrate Judge's Report.    In summary, Petitioner was convicted in 2010 in East Baton Rouge Parish on one count of aggravated rape, one count of armed robbery and one count of attempted armed robbery.   On direct appeal, Petitioner asserted (1) that the trial court abused its discretion by allowing testimony regarding Petitioner's comments to law enforcement officials regarding certain song lyrics, and (2) that such error was not harmless.   On February 10, 2012, the Louisiana Court of Appeal for the First Circuit affirmed Petitioner's convictions and sentences.   *See State v. Landry,* 90 So.3d 553 (La. App. 1 Cir. 2012).   Petitioner thereafter sought supervisory review in the Louisiana Supreme Court, which Court denied review, without comment, on June 1, 2012. *See State v. Landry*, 90 So.3d 436 (La. 2012).

On or about March 7, 2013, Petitioner filed an application for post-conviction relief ("PCR") in the state trial court, asserting that (1) he had a particularized need for a copy of his trial court record, (2) he was provided with ineffective assistance at trial in several respects, and (3) the prosecution engaged in misconduct in several respects.   Pursuant to Ruling dated July 25, 2013, the state trial court denied Petitioner's application.   Petitioner thereafter pursued additional review in the state appellate courts, but his applications for supervisory review were denied, with the intermediate appellate court denying review on January 16, 2014 and with the Louisiana Supreme Court denying review, without comment, on October 10, 2014.

## I.     Factual Summary

The facts and investigatory summary, as provided in the opinion of the Louisiana Court of Appeal for the First Circuit, are as follows:

> On the night of December 23, 2008, R.S. and her friend, K.G., borrowed a movie from a friend and watched it in the living room of R.S.'s apartment.   At some point,

they fell asleep. In the early morning hours on December 24, 2009, they were awakened by the sound of the front door of the apartment being forcefully kicked open.

The defendant, whom R.S. and K.G. did not know, entered the apartment holding a gun and wearing a bandana over the lower part of his face. The defendant rushed toward K.G. and hit him. After K.G. fell to his knees, the defendant ordered R.S. to tie K.G.'s hands.

While holding the gun, the defendant told R.S. to take off her clothes. When R.S. cried and objected, the defendant hit her in the face. The defendant then raped R.S. After raping R.S., the defendant took a television, a bag of Christmas presents, a game system, and two cell phones. The defendant then fled from the apartment.

The investigation that followed eventually led the East Baton Rouge Parish Sheriff's Department to focus on the defendant. Detective Jordan Webb and Lieutenant Leonard Moore first contacted the defendant on January 6, 2009, at his residence. In his initial contact with the defendant, Detective Webb noticed that the defendant fit the physical description of the person believed to have perpetrated the crimes. At that point, Detective Webb verbally advised the defendant of his *Miranda* rights. The defendant agreed to accompany the officers to the downtown police office for an interview.

Lieutenant Moore drove the defendant to the police station in a police vehicle, with Detective Webb sitting in the back seat of the vehicle with the defendant. During the transport, the defendant engaged in casual conversation with the officers, including explaining the meaning of a lyric of a rap song that was playing on the radio of the police vehicle.

Before Lieutenant Moore began questioning the defendant at the police station, he advised the defendant of his *Miranda* rights and the defendant signed a waiver-of-rights form. The defendant's January 6, 2009 interview was videotaped. During the interview, the defendant admitted to entering the apartment on December 24, 2009, wearing a bandana over his face and brandishing a gun. He confessed to ordering R.S. to tie K.G.'s hands with a zip tie that he brought with him, having sex with R.S., and taking the television and the other items. At that point, the defendant was placed under arrest.

*State v. Landry*, 2012 WL 603997 (La. App. 1 Cir. 2012).1

---

1      Although there is a discrepancy in the dates contained in the factual recitation, the indictment indicates that the crimes for which Petitioner was charged occurred on December 24, 2008. *See* Trial Rec. Vol I, p. 18.

Based upon the evidence and testimony elicited at trial, the jury found Petitioner guilty of aggravated rape, armed robbery and attempted armed robbery.

## II. Substantive Review - Applicable Law and Analysis

### Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).   Under this statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.   *Williams v. Taylor*, 529 U.S. 362, 413 (2000).   Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the petitioner's case or reaches a decision based on an unreasonable factual determination.  *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).   Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness.  *Id.   See also Williams v. Taylor, supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").   State court determinations of underlying factual issues are presumed correct, and Petitioner has the burden to rebut the presumption with clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011). Review under § 2254(d)(1) focuses on what a state court knew and did. *Cullen v. Pinholster, supra*, 563 U.S. at 182. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) based on the record that was before that state court." *Id*. at 184. State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). *Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d). *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).[2]

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court. *Williams v. Taylor*, 529 U.S. 362, 405, 406 (2000). If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

The State contends that, applying this standard to Petitioner's claims, there is no basis for the granting of habeas corpus relief.

---

[2]      The Fifth Circuit Court of Appeals has held that a federal court may properly hold an evidentiary hearing when it determines, based solely on the state court record, that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law. *Bobby Smith v. Burl Cain*, 708 F.3d 628, 634 (5th Cir. 2013).

Petitioner's Claims Nos. 1 and 2, Regarding Error
In The Introduction Of Testimony At Trial, Is Without Merit

Petitioner first asserts that the trial court erred in allowing, over objection by the defense, testimony by two investigating police officers as to statements made by Petitioner in the vehicle that the officers were using to escort Petitioner to the police station for questioning.    According to the officers, they had previously communicated to Petitioner his *Miranda* rights, and they were all engaging in casual conversation when Petitioner, at one point, posed a question to the officers regarding the meaning of a lyric from a rap song that was playing on the car radio.    Specifically, the officers testified that Petitioner asked them whether they knew what the phrase "superman that ho" meant.    When both officers signified that they didn't, Petitioner provided his interpretation of the phrase, specifically, that it is "when you have sex with a female from behind, ejaculate on her back, put a towel or some sort of sheet on her and make her walk around like superman." Over objection, the state trial judge allowed the officers' testimony regarding this exchange. Petitioner contends, however, that this determination was improper, that the evidence was not relevant, and that even if relevant, the probative value thereof was substantially outweighed by the risk of unfair prejudice.    Petitioner further contends that allowance of this testimony at trial was not harmless error.

Addressing Petitioner's claim in this regard, this Court begins with the premise that a federal habeas court provides relief only when a state petitioner is found to be in custody "in violation of the Constitution or laws or treaties of the United States."    28 U.S.C. § 2254(a).    Thus, a federal habeas court asks only whether a constitutional violation infected the trial.    *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law).    In other words, an error in the application of state law by the trial court does not provide grounds for habeas relief.    *Engle v. Isaac*, 456 U.S. 107, 119 (1982).    Habeas corpus review is limited to

questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *See Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011). Accordingly, to the extent that the foundation of Petitioner's habeas application rests on the proper interpretation and application of state jurisprudence and rules of evidence, this is not an issue within the scope of federal habeas corpus review.

In light of the foregoing, review by a federal habeas court relative to the admission of evidence by a state court is limited to whether the state court's evidentiary rulings were sufficiently egregious to render the trial fundamentally unfair or to violate an explicit constitutional right. *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991); *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989). The Due Process Clause provides a mechanism for relief when evidence is wrongly admitted in a state court criminal proceeding, but only if that evidence is so unduly prejudicial that it renders the trial fundamentally unfair. *Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005). To meet this test, the challenged evidence must be "a crucial, critical, or highly significant factor in the context of the entire trial." *See, e.g., Hennington v. Cockrell*, 2003 WL 21145775 *8 (N.D. Tex. May 15, 2003). *See also Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987).

On direct appeal, the Louisiana First Circuit Court addressed this claim and concluded that admission of the evidence by the trial court relative to the referenced conversation was not an abuse of discretion under state law. The appellate court concluded that the evidence was admissible to show the events leading up to Petitioner's confession, including the relaxed and coherent nature of the conversation between Petitioner and the police officers, so as to enable the jury to determine the weight to be given to his confession in light of a suggestion by the defense that the confession was tainted by Petitioner's prior use of alcohol and drugs. *See State v. Landry, supra*, 2012 WL 603997 at *3. Whereas Petitioner seeks to argue that the testimony regarding

the song lyrics was unduly prejudicial and was meant solely to inflame the jury and attack his character inasmuch as it was sexual in nature and derogative of females, both the trial and appellate courts concluded that Petitioner failed to show that the probative nature of the testimony was sufficiently outweighed by the risk of unfair prejudice.   Considering the deference that is afforded to the state court's interpretation of its own law, this Court is unable to conclude that this evidentiary determination was an erroneous conclusion under state law.

Further, in the alternative, even accepting Petitioner's contention that admission of the referenced evidence was insupportable, the Court would reject Petitioner's claim.   In this context, the Court considers whether such an error may be found to be harmless or whether admission of the evidence should instead be found to have had a substantial and injurious effect or influence in determining the jury's verdicts under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).   *See Corwin v. Johnson*, 150 F.3d 467, 476 (5th Cir. 1998) (assuming that an admission of evidence constituted error and determining whether the petitioner was entitled to federal habeas relief under *Brecht*).   The Fifth Circuit has articulated the *Brecht* standard as follows:

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is *more* than a mere reasonable possibility that it contributed to the verdict.   It must have had a *substantial* effect or influence in determining the verdict.   We recognize, however, that if our minds are in virtual equipoise as to the harmlessness, under the *Brecht* standard, of the error, then we must conclude that it was harmful.   Moreover, the *Brecht* standard does not require in order for the error to be held harmful that there be a reasonable probability that absent the error the result would have been different.

*Tucker v. Johnson*, 242 F.3d 617, 629 (5th Cir. 2001) (internal citations and quotation marks omitted).

Applying the foregoing standard, the Court concludes that if any error occurred in allowing the testimony regarding the referenced exchange between Petitioner and the two officers, such error was harmless.   The testimony was clearly of limited evidentiary importance in the context

of Petitioner's criminal trial, specifically because it did not relate in any way to Petitioner's guilt or innocence in connection with the charged offenses.  In addition, the evidence that did relate to Petitioner's guilt was overwhelming, including Petitioner's confession thereto and the testimony of two eyewitnesses relative to Petitioner's conduct during the commission of the offenses. Finally, as noted by the First Circuit Court of Appeal in affirming Petitioner's convictions, the record does not reflect that the testimony at trial relative to the rap lyrics and Petitioner's interpretation thereof was "excessive or unnecessarily cumulative."  Accordingly, this testimony may not be seen to have been "a crucial, critical, or highly significant factor in the context of the entire trial," and Petitioner's claim in this regard should be rejected.

Petitioner's Claim No. 3, Regarding The Failure To<br>Provide Him, On Appeal And On PCR Review, With Free<br><u>And Complete Copies Of His Trial Record, Is Without Merit</u>

Petitioner next contends that he was deprived of due process and equal protection in connection with the alleged failure to provide him, on direct appeal and in connection with his PCR application, a complete copy of his trial record at public expense.  Petitioner asserts that he needed those materials to file a supplemental *pro se* memorandum in the intermediate appellate court in connection with his direct appeal and also to adequately present his arguments and assertions on post-conviction review.  Notwithstanding, the Court concludes that this claim is without constitutional merit.

In the context of a need asserted by a criminal defendant to review the state court record, a distinction is made between whether the need is asserted on direct appeal or in post-conviction proceedings.  If the former, it has been oft stated that on direct appeal, a defendant has a right to a trial transcript or an alternative device that fulfils the same function as a trial transcript.  *Griffin v. Illinois*, 351 U.S. 12, 18-20 (1956).  Notwithstanding, this right is not absolute, and access to

the trial record by a defendant's appellate attorney is often seen to be a reasonable accommodation of this right. Specifically, "if the habeas petitioner's attorney was provided a copy of his trial transcript for his direct appeal, 'there is no constitutional requirement that the defendant also be provided with physical custody of a copy of the transcript.'" *Richardson v. Quarterman*, 2008 WL 5056724, * (S.D. Tex. Nov. 20, 2008), *citing Smith v. Beto*, 472 F.2d 164, 165 (5th Cir. 1973). *See also Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973); *Harris v. Warden, Winn Correctional Center*, 2017 WL 4583803, *2-3 (July 14, 2017). In contrast, on post-conviction review, an indigent defendant is not entitled to a free transcript or a copy of the state court record to pursue a collateral attack on his convictions if he had access to the record on direct appeal and fails to adequately demonstrate that he requires the record to establish a non-frivolous post-conviction claim. *Yates v. Collins*, 988 F.2d 1210 (5th Cir. 1993), *citing Smith v. Beto, supra*. *See also Howard v. Cain,* 2015 WL 536918, *5 (W.D. La. Aug. 6, 2015) (same).

With regard to Petitioner's direct appeal in the instant case, Petitioner asserts that in December 2010, shortly after he was sentenced, he filed in the state trial court a Motion to Appeal and a Motion to Obtain Transcript, signifying that he was seeking to pursue an appeal from his convictions. *See* R. Doc. 8 at pp. 2 and 4. On February 2, 2011, the Motion was denied in the trial court, specifically because appellate counsel had been appointed on Petitioner's behalf and had designated the portions of the record that were pertinent to the appeal. *See id*. Petitioner thereafter filed in the intermediate appellate court, on or about August 30, 2011, a request for leave to file a supplemental *pro se* brief in support of his direct appeal. *See id*. at p. 7. This request was granted on the same date, and Petitioner was allowed until September 29, 2011 to file his *pro se* brief. *See id*. at p. 8. In addition, Petitioner's Motion to Obtain a Copy of the Record was granted on September 1, 2011, and the appellate court directed that "[t]he record will be forwarded

to Jerry Goodwin, Warden, at David Wade Correctional Center, who shall allow defendant …

access thereto and then return it to this Court by October 4, 2011." *See id*. at p. 10. It appears

that the trial record was thereafter received at DWCC, and Petitioner has acknowledged that he

was provided with an opportunity to review same and to discuss his proposed memorandum "at

length" with an inmate counsel assistant at the prison. *See id*. at pp. 19 and 21.[3] It further appears

that Petitioner was dissatisfied with the record received, specifically because proceedings relative

to jury selection had not been included (allegedly causing the record to be "incomplete") and

because he believed that the transcription of proceedings was not accurate or "verbatim." *See id*.

at pp. 21 and 28. Although Petitioner was thereafter granted a requested extension by the

appellate court, until October 31, 2011, to file his *pro se* brief, *see id*. at p. 25, he was not granted

a subsequent second request for an additional extension of time. *See id*. at p. 33. In addition, a

motion filed by Petitioner in the state trial court, requesting that audio recordings of the trial

proceedings be preserved, was also denied. *See id*. at p. 35. Ultimately, it does not appear that

Petitioner filed a supplemental *pro se* brief in the intermediate appellate court on direct appeal,

and when he subsequently filed a *pro se* brief before the Louisiana Supreme Court in March 2012,

Petitioner made no mention therein of the failure of the lower court to provide him with the state

---

3        Whereas Petitioner asserts in his application before this Court that he "was not provided
with a copy of his records" on direct appeal and that, when the records were received at DWCC,
he "had already been transferred to Louisiana State Prison and the records were returned to the
court without [his] ever having access," *see* R. Doc. 1 at p. 2, this assertion is not borne out by the
documentation that Petitioner has provided to the Court.   Specifically, Petitioner has provided the
Court with copies of correspondence written by him in September 2011, during the time allowed
to him to submit a supplemental *pro se* memorandum and before he was transferred to the
Louisiana State Penitentiary, which correspondence indicates that as of September 13, 2011, his
trial records had been received at DWCC, *see* R. Doc. 8 at p. 12, and that as of September 22,
2011, he had been provided with an opportunity to review same. *See* id. at p. 21.  It further
appears that Petitioner was not transferred from DWCC until October 17, 2011, *see id*. at p. 29,
and that his sole complaint regarding the completeness of the record was that the jury selection
process had not been transcribed and included therein.

court record or with a more complete copy thereof.  It appears that Petitioner's subsequent attempts to obtain copies of the state court record, through his appellate attorney and through the state court clerk's office, have been unsuccessful.  *See* R. Doc. 8 at pp. 37-50.

Based on the foregoing, it appears to this Court that Petitioner was in fact provided with a copy of his trial record to review on direct appeal, both personally and through his attorney. Petitioner's dissatisfaction with the completeness of the record, merely because of a lack of transcription of the jury selection proceedings and because of a conclusory assertion regarding the accuracy of transcription, is not sufficient to state a constitutional claim relative to this issue. Specifically, Petitioner has made no substantive claim before this Court or before the state courts that there was any specific deficiency in the jury selection process, and he has pointed to no actual inaccuracies in transcription.  Accordingly, this claim is subject to dismissal as being without merit.

Turning to the related question whether Petitioner has shown that his constitutional rights have been violated by the failure to provide him with a copy of his trial record at public expense to review in connection with his post-conviction relief proceedings, the Court similarly concludes that Petitioner has failed to meet his burden in this regard.  As noted above, the law is clear that an indigent criminal defendant does not have an absolute right under federal law to obtain a free copy of trial transcripts or other record documents in connection with post-conviction or collateral review proceedings.  Instead, a petitioner must show both that the claims that he seeks to raise on collateral review are not frivolous and that he requires the documentation to establish the validity of those claims.  *See Yates v. Collins, supra,* 988 F.2d at 1210 ("[A]n indigent defendant is not entitled to a free transcript if he had access to the record on direct appeal and fails to demonstrate that he requires the record to establish a non-frivolous post-conviction claim"); *Smith v. Beto,*

*supra*, 472 F.2d at 165 (affirming the lower court's finding that there was no constitutional violation where the petitioner's attorney had access to the state court record and trial transcripts on direct appeal and where "the petitioner did not need a transcript in order to establish his contention that he was denied effective counsel at his state trial").  *See also Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) (same); *United States v. MacCollom*, 426 U.S. 317, 325-26 (1976) (concluding that a federal petitioner on collateral review must demonstrate that his claims are not frivolous and that transcripts are needed to prove his claims before he is entitled to a free copy of pertinent transcripts).

Whereas Petitioner's state court PCR application in this case included a request for a free copy of the state court record for the purpose of pursuing his post-conviction claims, and whereas he asserted therein that he had a "particularized need" for same, the state court Commissioner rejected this contention, finding that Petitioner was conducting a mere "fishing expedition" based upon vague and conclusory allegations.   The Commissioner further concluded that Petitioner had not shown a sufficient particularized need, and that his request was lacking in sufficient facts to support the relief requested.    To the extent that this determination was based upon an interpretation and application of state law, *i.e.*, *State ex rel. Bernard v. Criminal District Court Section "J"*, 653 So.2d 1174 (La. 1995), it is not the province of this Court to review same.   *See Hills v. Cain*, 2015 WL 1004197, *8 (M.D. La. March 6, 2015) (rejecting a petitioner's claim regarding the state court's failure to provide a copy of the state court record).   Further, to the extent that Petitioner seeks to rely upon federal law in seeking copies of the referenced documentation, he has failed to show that the state courts erred in their resolution of Petitioner's request.   Specifically, as discussed in greater detail below, in light of the complete lack of factual specificity in Petitioner's request and his complete failure to show that his claims had potential

merit and were not frivolous, this Court finds no unreasonable application of federal law in the state court's refusal to provide him with free copies of the requested documentation. *See Hernandez v. Cain*, 2015 WL 1810822, 10 (E.D. La. April 20, 2015) (finding no merit to a petitioner's claim regarding a failure to provide copies of transcripts for collateral review because "the unsubstantiated nature of the ineffective assistance of counsel claims, ... all of which are meritless, vague, and conclusory," failed to meet the petitioner's "burden of showing particularized need"); *Parks v. Cain*, 2014 WL 505329, *17 (E.D. La. Feb. 6, 2014) (finding that the petitioner had "failed to satisfy his burden of proof regarding his alleged need for a transcript"); *Williams v. Warden*, 2013 WL 4413743, *5 (W.D. La. Aug. 15, 2013) (finding, in response to a petitioner's complaint regarding the denial of a copy of trial transcripts, that because a habeas petitioner has no constitutional right to state post-conviction review, any "alleged infirmities in the review process do not raise a constitutional issue cognizable in a federal habeas application"). Accordingly, the Court concludes that this claim is also subject to dismissal as being without merit.

Petitioner's Claims Nos. 4 and 5, Regarding Ineffective Assistance
Of Counsel And Prosecutorial Misconduct, Are Procedurally Defaulted

Turning to Petitioner's claims relative to alleged ineffective assistance provided by his trial counsel and to alleged misconduct on the part of the prosecution in this case, the State contends that these claims were rejected on procedural grounds in the state trial court and so are not properly before this Court on habeas review. Specifically, the State asserts that the trial court, in rejecting these claims, concluded that they were procedurally barred pursuant to La. Code Crim. P. art. 926(B)(3) because Petitioner failed to specify with reasonable particularity the factual basis for the relief requested.

The Court concludes that the State's contention in this regard is well-founded. In this regard, when a state court decision to deny post-conviction relief rests on a state procedural ground

that is independent of the federal question raised by Petitioner and is adequate to support the judgment, the federal court lacks jurisdiction to review the merits of Petitioner's federal claim. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Moore v. Roberts*, 83 F.3d 699, 701 (5th Cir. 1996). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." *Coleman v. Thompson, supra*, 501 U.S. at 729-730:

> In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731-32, *citing Rose v. Lundy*, 455 U.S. 509, 518, (1982); *Moore v. Roberts, supra*, 83 F.3d at 703. This rule applies even if the state court addresses the substance of the claim in the alternative. *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999).

In order for a state procedural bar to provide an "independent" basis for dismissal, the state court adjudication of a habeas petitioner's claim must have been explicitly based on a state procedural rule. *Amos v. Scott*, 61 F.3d 333, 338 n. 15 (5th Cir. 1995). *See also Moore v. Roberts, supra*, 83 F.3d at 702; *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar chases. *Walker v. Martin*, 562 U.S. 307, 1127-28 (2011); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Marks v. Terrell*, 2014 WL 1246065, *8 (E.D. La. Mar. 24, 2014). The state procedural bar is presumptively adequate when the state court expressly and regularly relies upon it in deciding not to review claims for collateral relief. *Glover v. Cain, supra*, 128 F.3d at 902. Further, the procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the

judgment." *Sones v. Hargett, supra,* 61 F.3d at 416.   Notwithstanding, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.   *See Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996).   *See also Johnson v. Lensing*, 1999 WL 562728, *4 (E.D. La. July 28, 1999) (finding that application of procedural rule was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, 1999 WL 518843, *4 (E.D. La. July 20, 1999) (same, where procedural rule was misapplied).   Further, a habeas petitioner may rebut the presumption of adequacy by establishing that the procedural rule is not "strictly or regularly followed" or, notwithstanding, by demonstrating (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice."   *Coleman v. Thompson, supra*, 501 U.S. at 750; *Moore v. Roberts, supra*, 83 F.3d at 702.

It appears in this case that the trial court explicitly relied upon a state procedural rule in rejecting Petitioner's ineffective assistance and prosecutorial misconduct claims.   Specifically, the court relied upon La. Code Crim. P. art. 926(B)(3), which provides that a petitioner's application for post-conviction relief shall allege "[a] statement of the grounds upon which relief is sought, specifying with reasonable particularity the factual basis for such relief."   In addressing these issues, the state court Commissioner's Report noted that the State had asserted the procedural defense relative thereto, and although the Commissioner's Report also included a cursory substantive analysis of Petitioner's claims, it is clear that such analysis was undertaken in the alternative because, in concluding the Report, the Commissioner explicitly stated that he agreed with the State's contention that "the ineffective assistance of counsel claims are barred based on Petitioner's failure to state with reasonable particularity the grounds for which relief can be sought" and also that "all these claims [of prosecutorial misconduct] are procedurally barred

pursuant to LSA-C.Cr.P. art. 926(b)(3)."[4]   The state trial judge thereafter dismissed Petitioner's

PCR application on July 25, 2013, stating that "[t]he court finds adequate and adopts as its own

the reasons set forth in the Commissioner's Recommendation."   It is clear, therefore, that the state

court relied upon the referenced procedural rule in rejecting Petitioner's claims.   In addition,

article 926(B)(3) has been found by the federal courts to be an independent and adequate ground

sufficient to bar federal review under the doctrine of procedural default.   *See, Brumfield v. Cain*,

2008 WL 2600140, *3-4 (M.D. La. June 30, 2008) (noting that article 926 enjoyed a presumption

of adequacy where the state court expressly relied upon it in rejecting consideration of the

petitioner's claims and where the petitioner had failed to show that the procedural rule was not

regularly or evenhandedly followed).   Finally, this Court finds that the conclusion of the

Commissioner in this regard is entirely reasonable and justified.   Petitioner has provided only

generalized and conclusory assertions relative to his trial attorney's conduct in failing to

investigate, failing to call witnesses, failing to object to "prejudicial errors," and "forcing"

Petitioner to testify.   He has never provided with any specificity whatever the identities of the

uncalled witnesses, the substance of their purported testimony, whether they were available and

willing to testify, the nature of the purported "prejudicial errors" of which he complains, or the

manner in which he was purportedly "forced" to testify.   Similarly, as noted by the Commissioner

relative to Petitioner's claims of prosecutorial misconduct, "Petitioner has given no factual details,

including which witnesses made inconsistent statements, how the prosecutor vouched, or what

jury instructions were prejudicial."   As a result, this Court finds that the state court's reliance upon

---

4       The Court notes that the copy of the state court Commissioner's Report that is contained
in the record does not include page 6 thereof.   Notwithstanding it is abundantly clear from the
tenor of the Report and from the statements made therein, that the Commissioner expressly found
Petitioner's claims to be wholly lacking in factual specificity sufficient to support a substantive
analysis and therefore recommended denial of Petitioner's claims on the basis of the procedural
deficiency.

the procedural rule in denying Petitioner's claims was reasonable and justified, and these claims are barred from review in this Court unless Petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law or that a failure to consider the defaulted claims will result in a fundamental miscarriage of justice.   *Coleman v. Thompson, supra.*

To establish "cause," Petitioner must show that some objective factor external to the defense prevented him from properly raising his claims in state court.   *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).   To establish "prejudice," Petitioner must show, "not merely that the [asserted] errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Interpreting Petitioner's complaints relative to the failure of the trial and appellate courts to provide him with a copy of the state court record in this case as an attempt to show cause for his procedural default, this Court is unable to accept Petitioner's assertions in this regard.   As determined in *Glover v. Cain*, 128 F.3d 900, 903 (5th Cir. 1997), "cause" in this context requires that a petitioner show that his failure to receive the trial record or transcripts "prevented him from developing a factual or legal basis for his claim[s]."   Where a petitioner may be found to have had adequate information relative to the legal or factual basis for his claims, then the failure to provide the record is not generally seen to have prevented him from asserting his claims in state court in a procedurally correct manner.   Other courts have arrived at similar conclusions in this context. *See, e.g., Snyder v. Johnson*, 2001 WL 880703, *4 (N.D. Tex. July 24, 2001).

In *United States v. MacCollom*, *supra*, 426 U.S. at 317, the United States Supreme Court addressed the question whether 28 U.S.C. § 753, which governs the availability of a free copy of the trial transcript to an indigent federal petitioner, violates the Constitution in the post-conviction collateral relief context.   The petitioner in *MacCollom* had requested a free copy of his trial

transcript so that he could prepare an application for collateral relief. Ultimately, the Court concluded that requiring the petitioner to satisfy the preconditions set forth in the referenced statute at the post-conviction stage, *i.e.*, certification by a judge that the claims were "not frivolous" and that the transcript was "needed to decide the issue presented," did not violate the petitioner's constitutional rights. The *MacCollom* Court noted that the petitioner's "naked allegation of ineffective assistance of counsel" was insufficient to justify the awarding of a free copy of his trial transcript." *Id*. at 327. The Court further aptly observed:

> The usual grounds for successful collateral attacks upon convictions arise out of occurrences outside the courtroom or of events in the courtroom of which the defendant was aware and can recall without the need of having his memory refreshed by reading a transcript. He may well have a need of a transcript [to support his claim], but rarely, if ever, … to become aware of the events or occurrences which constitute a ground for collateral attack.

*Id*. at 326, *quoting United States v. Shoaf*, 341 F.2d 832, 835 (4th Cir. 1964).

In the instant case, Petitioner's assertions are insufficient to establish cause for his procedural default. In the first place, as noted above, Petitioner was provided with the state court record in connection with his direct appeal. As such, he had an opportunity to review same and should have taken notes or familiarized himself sufficiently therewith to state with some degree of factual specificity the basis for his claims. *See Jones v. Collins*, 1 F.3d 1236 (5th Cir. 1993) ("An indigent defendant … is not entitled to a free transcript if he had access to the record on direct appeal"); *Yates v. Collins*, *supra,* 988 F.2d at 1210 ("[A]n indigent defendant is not entitled to a free transcript if he had access to the record on direct appeal and fails to demonstrate that he requires the record to establish a non-frivolous post-conviction claim"). Further, Petitioner was present during the entirety of his criminal trial and should be expected to know the factual basis for his claims with far greater specificity than he has provided. For example, as noted above, Petitioner asserts that there were several people who he told his attorney to contact and to subpoena

at trial on Petitioner's behalf, but Petitioner fails in all of his pleadings to identify even one of these people or the substance of their purported testimony.  Petitioner further asserts that there were several witnesses who were potentially subject to impeachment because they testified falsely at trial and/or inconsistently with prior statements, but again Petitioner fails to identify which witnesses testified falsely or inconsistently (other than a brief mention of the victims themselves, *see* R. Doc. 1 at p. 14) and fails completely to provide the nature of any false or inconsistent testimony.  Petitioner further asserts that the prosecutor encouraged or presented false testimony and improperly vouched for the credibility of a witness or witnesses, but again provides no information regarding who testified falsely or whose credibility was vouched for.  Petitioner asserts that "prejudicial" jury instructions were not objected to, but provides no information whatever regarding the purported improper instructions.  Finally, Petitioner asserts that his attorney generally "failed to investigate" and "failed to object to various prejudicial errors during trial," but Petitioner provides not a scintilla of information as to the nature of any additional investigation that was required or as to what it would have shown, other than a generalized statement regarding unidentified vague inconsistencies and unidentified false testimony.  Nor does Petitioner identify the "prejudicial errors" to which his attorney purportedly did not object with any specificity whatever.[5]

    As pointed out in *Pitre v. Cain*, 2016 WL 1371206, *7 (W.D. La. Jan. 21, 2016), if Petitioner had presented a PCR application to the state district court that included sufficient "factual specificity" to support a finding that his claims were not frivolous, Louisiana law provided

---

5    Petitioner includes an assertion that his attorney should have retained an expert to contest the State's evidence relative to DNA findings.  Considering, however, that Petitioner admits to having engaged in sex with the victim (which Petitioner contends was consensual), *see* R. Doc. 1 at p. 11, the Court fails to see how an expert would have been of any benefit in refuting the State's case.

a mechanism whereby he could have then obtained a copy of the record "simply by showing a 'particularized need' for the transcript, *i.e.* by showing that the transcript was necessary to resolve his claims fairly." *Id.* *Cf., United States v. MacCollom, supra* (upholding a similar requirement for federal petitioners). Notwithstanding, Petitioner's claims were all so conclusory and so poorly articulated as to suggest that he just wanted to go on a "fishing expedition" for potential errors in his criminal proceedings, and the state court Commissioner concluded as much, denying Petitioner's request for a copy of the record at public expense. As a result, this Court is unable to conclude that the failure to provide Petitioner with a copy of the record constituted an objective factor external to the defense that prevented him from properly raising his claims in state court. Accordingly, the Court concludes that "cause" has not been shown in the instant case that would support this Court's disregard of his procedural default.[6]

Having found that "cause" has not been shown in this case, the Court need not address the second requirement set forth in *Coleman* for overcoming the procedural default, *i.e.*, "prejudice." *See Glover v. Cain, supra.* Notwithstanding, in addressing this issue, the Court finds that Petitioner has also failed to make a sufficient showing relative to this requirement. Specifically,

---

[6]    The Court notes that Petitioner has presented a copy of correspondence written by his appellate attorney in December 2012, *see* R. Doc. 2-3 at p. 40, indicating that the attorney would not provide Petitioner with a copy of his trial record because of a Louisiana statute, La. R.S. 46:1844(W), that the attorney represented had been interpreted to prohibit the release of such records to offenders convicted of sex offenses. Specifically, the referenced statute provides that public officials, clerks of court, and attorneys for any party are prohibited from publicly disclosing (except during trial in the case of attorneys) "the name, address, or identity of crime victims who ... are victims of sex offenses." *See* §§ 1844(W)(1) and (2). This Court opines that in an appropriate case, *i.e.*, where a petitioner has met his burden of showing that his claims are not frivolous and that he has a particularized need for the record, the application of this statute to prevent a petitioner from obtaining possession thereof could potentially amount to "cause" within the meaning of *Coleman v. Thompson, supra.* In the instant case, however, Petitioner was in fact provided with a copy of his record in connection with his direct appeal and, as discussed above, he has wholly failed to show that his claims are not frivolous and that he has a particularized need for the record in any event. Accordingly, the Court concludes that it need not address this issue in this case.

in the absence of any factual specificity relative to the nature of any alleged constitutional errors, Petitioner has failed to establish that he was subjected to actual prejudice by virtue of such errors, and the Court is left with nothing more than a mere possibility of prejudice which does not rise to the level of "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady, supra*, 456 U.S. at 170.

Finally, to demonstrate that a failure to consider the claim will result in a "fundamental miscarriage of justice," a habeas petitioner must show, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 645 (5th Cir. 1999). To establish such actual innocence, Petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* In the absence of any such showing, Petitioner's defaulted claims are not properly before this Court.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant

case, the Court finds that reasonable jurists would not debate the denial of the Petitioner's § 2254 application or the correctness of the procedural or substantive ruling. Accordingly, it is appropriate that, in the event that the Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

## **RECOMMENDATION**

It is recommended that that Petitioner's application for habeas corpus be denied, and that this proceeding be dismissed, with prejudice. It is further recommended that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on February 28, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**